UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
————————————————————X
In re:

                                                    Chapter 7
THOMAS NOFER,                                       Case No. 1-12-46694-NHL
                        Debtor.
————————————————————X

DANIEL MIRARCHI,                                    Adv. Proc. No. 1-12-01342-NHL


                        Plaintiff,


THOMAS NOFER,
                        Defendant.
————————————————————X

## DECISION GRANTING IN PART AND DENYING IN PART
## MOTION FOR JUDGMENT ON THE PLEADINGS

APPEARANCES:

    Daniel Mirarchi                         Joel M. Shafferman
    *Pro Se Plaintiff*                      Shafferman & Feldman LLP
                                            18 East 41st Street, Suite 1201
                                            New York, New York 10017
                                            *Attorney for Defendant*


                    HONORABLE NANCY HERSHEY LORD
                    United States Bankruptcy Judge


        Daniel Mirarchi (the "Plaintiff") initiated this adversary proceeding by filing a *pro se*

complaint (the "Complaint"), against his former brother-in-law,[1] debtor/defendant Thomas Nofer

(the "Debtor"), objecting to the dischargeability of three pre-petition judgment debts, pursuant to

11 U.S.C. § 523(a)(4).  The Debtor filed a motion pursuant to Federal Rule of Civil Procedure

("Rule") (12)(c) for judgment on the pleadings dismissing the Complaint (the "Motion").  For

the reasons that follow, the Court grants the Motion in part and denies the Motion in part.

---

[1] Compl. ¶¶ 5, 10, ECF No. 1.

## I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern

District of New York standing order of reference dated August 28, 1986, as amended by order

dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).  This

decision constitutes the Court's findings of fact and conclusions of law to the extent required by

Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7052.

## II.    BACKGROUND[2]

In February 2001, the Plaintiff and the Debtor, together with non-parties Michael Fontana

and Vincent Mirarchi, formed Viking Mechanical Inc. ("Viking"), a New York Corporation.[3]

Compl. ¶ 5, ECF No. 1.  The Plaintiff served as Viking's President and Chief Executive Officer.

Compl. ¶ 7, ECF No. 1.

The Debtor was also the sole shareholder of Central Design Systems Inc. ("Central"), a

subcontractor of Viking. Compl. ¶¶ 7–8, ECF No. 1.  In September 2005, the Debtor, on behalf

of Central, began demanding advance payments from Viking, which the Plaintiff refused to

tender. Compl. ¶ 9, ECF No. 1.  Then, on October 27, 2005, the Debtor and Vincent Fontana

seized control of Viking and barred the Plaintiff from Viking's business operations. Compl. ¶ 11,

ECF No. 1; Compl. Ex. A ¶ 19, ECF No. 1-3.

In January 2006, the Plaintiff petitioned the New York State Supreme Court, County of

Suffolk for judicial dissolution of Viking, due to the Debtor's alleged wrongful management and

---

[2] In reviewing the Motion, "we draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (stating the standard for reviewing a motion for judgment on the pleadings).

[3] Michael Fontana held 49% of the Viking shares; the Plaintiff, the Debtor, and Vincent Mirarchi each held 17%. Vincent Mirarchi, the Plaintiff's brother, ceded his interest to the Plaintiff, such that the Plaintiff held 34% of the stock. Compl. ¶ 5, ECF No. 1; Compl. Ex. A ¶ 4, ECF No. 1-3.

fraudulent conduct (the "Dissolution Action"). Compl. ¶ 12, ECF No. 1; Compl. Ex. A, ECF No. 1-3. For example, after the seizure, Viking opened bank accounts under false authorization and defaulted on its corporate line of credit, which the Plaintiff had personally guaranteed. Compl. ¶ 11, ECF No. 1; Compl. Ex. A ¶¶ 14–15, ECF No. 1-3. Additionally, Viking subcontracted its entire sheet metal business to Central without competitive bidding, overpaid Central, and purchased equipment for Central without reimbursement. Compl. ¶ 11, ECF No. 1; Compl. Ex. A ¶¶ 16, 18, ECF No. 1-3.

The parties settled the Dissolution Action through a Securities Purchase Agreement (the "Agreement"). Compl. ¶ 14, ECF No. 1. The Agreement provided, *inter alia*, that the Plaintiff would discontinue the Dissolution Action with prejudice and release any and all potential claims against Viking, Central, and the Debtor. Compl. ¶ 14, ECF No. 1; Compl. Ex. B 2 § 1.04, ECF No. 1-4. In exchange, the Debtor would purchase the Plaintiff's interest in Viking for the sum of $150,000 (the "Purchase Price"), with $60,000 due on signing, and the remainder paid in monthly installments. Compl. ¶ 14, ECF No. 1. The Agreement also required the distribution of Viking's 2004 profits (the "Profits") to shareholders. Compl. ¶ 15, ECF No. 1; Compl. Ex. B § 1.01, ECF No. 1-4. The Plaintiff, however, never received his 34% share of the Profits. Compl. ¶¶ 14–15, ECF No. 1.

When the Debtor defaulted on the Purchase Price payments, the Plaintiff initiated an action in New York State Supreme Court, Suffolk County to enforce his rights and remedies under the Agreement. Compl. ¶¶ 14, 18, ECF No. 1. The Plaintiff demanded judgment against the Debtor for the unpaid balance of the Purchase Price, plus 12.5% default interest; and judgment against Viking for the undistributed Profits.[4] Compl. Ex. G 7 ¶¶ 30–34, ECF No. 1-10.

---

[4] The action also sought judgment against non-party Michael Wian, based upon his guaranty of obligations under the Agreement. Compl. Ex. G 7 ¶¶ 30–34, ECF No. 1-10; Compl. Ex. B, ECF No. 1-5.

On April 28, 2008, the state court granted the Plaintiff a default judgment and ordered that the Debtor pay the Plaintiff $148,891.05, plus attorney's fees of $7,980.00 and costs of $104.26 (the "Supreme Court Judgment").[5] Compl. Ex. I, ECF No. 1-12.

The Agreement further stipulated that the Plaintiff would receive $300 for each day that he was required to appear in connection with a law suit pending against Viking. Compl. Ex. B 2 § 1.05, ECF No. 1-4. The Plaintiff subsequently expended two days on that litigation, for which he was not paid. Compl. ¶ 17, ECF No. 1. Thus, he brought two actions in the District Court of the County of Suffolk against Viking and the Debtor to recover his fees under the Agreement. Compl. ¶ 17, ECF No. 1. Neither Viking nor the Debtor appeared in either action. Consequently, the Plaintiff was awarded judgment in the amount of $300, plus interest and costs, in each action (the "District Court Judgments"). Compl. ¶ 17, ECF No. 1; Compl. Ex. E, ECF No. 1-7; Compl. Ex. F, ECF No. 1-8.

On September 19, 2011, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On December 19, 2012, the Plaintiff objected to the dischargability of the Supreme Court Judgment and District Court Judgments under 11 U.S.C § 523(a)(4).

### III.    LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c), applicable through Bankruptcy Rule 7012, may be made "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In the interest of due process, courts sparingly grant such motions, limiting relief to circumstances "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

---

[5] The state court determined that the Debtor was personally responsible for the sum of $148,891.05, which included both the Plaintiff's undistributed share of the Profits and the unpaid balance of the Purchase Price. Compl. Ex. J 6:15–7:14, ECF No. 1-13.

In ruling on a Rule 12(c) motion, "the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant." *Mennella v. Office of Court Admin.*, 938 F. Supp. 128, 131 (E.D.N.Y. 1996), *aff'd*, 164 F.3d 618 (2d Cir. 1998). Exhibits attached to the complaint may be considered in deciding a Rule 12(c) motion. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). It is the movant's burden "to show the absence of any material issue appearing genuinely to be in dispute." *Falls Riverway Realty, Inc. v. City of Niagara Falls, N.Y.*, 754 F.2d 49, 54 (2d Cir. 1985) (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 157 (1970)).

If a defendant succeeds on a motion for judgment on the pleadings, he is "entitled to a judgment as a matter of law." *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990). However, a court should not dismiss a complaint pursuant to a Rule 12(c) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (discussing Rule 12(b)(6)); *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977) (applying *Conley* standard to Rule 12(c)). The court is "not bound to accept as true legal conclusions couched as factual allegations." *LaFaro v. N. Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476–77 (2d Cir. 2009). Accordingly, "[t]o survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Furthermore, when a plaintiff acts *pro se*, the "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quotation omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts liberally construe *pro se* pleadings "to raise the strongest argument that they

suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Nevertheless, the court may not

"invent factual allegations that [a *pro se* litigant] has not pled." *Chavis v. Chappius*, 618 F.3d

162, 170 (2d Cir. 2010).

## IV.    DISCUSSION

The discharge of debts pursuant to 11 U.S.C. § 727 gives a "fresh start" to the "honest but

unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  However, the Bankruptcy

Code provides for "certain categories of nondischargeable debts that Congress has deemed

should survive bankruptcy." *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir.

2003).  11 U.S.C. § 523(a)(4) exempts from discharge any debt arising from "fraud or

defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  When, as here, the

debt arises from a settlement agreement, "courts are to look beyond the contractual nature of

[the] settlement agreement to determine whether an underlying debt was a debt 'for fraud or

defalcation while acting in a fiduciary capacity' as defined by § 523(a)(4)." *In re DeTrano*, 326

F.3d at 322; *see also Archer v. Warner*, 538 U.S. 314, 323 (2003).[6]

## A.  Defalcation[7]

A claim of defalcation need only satisfy the general pleading requirements of Rule 8(a).

*See Grow Up Japan, Inc. v. Yoshida (In re Yoshida)*, 435 B.R. 102, 110 (Bankr. E.D.N.Y. 2010).

Rule 8(a) requires that the complaint "give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation omitted).

---

[6] The Plaintiff cites to *Archer* for the assertion that the discharge exception under § 523 applies to debts arising out of settlement agreements when the debt underlying settlement agreement resulted from fraud. *Archer v. Warner*, 538 U.S. 314, 323 (2003).  *Archer* merely permits courts to "look behind" settlement agreements to the actual source of the debt to determine whether the debt falls within an exception to discharge. *Id.*

[7] The Plaintiff alleges fraud, embezzlement, and larceny as grounds for non-dischargeability.  While it does not specifically identify defalcation, the Complaint quotes the entire text § 523(a)(4).  Thus, in exercising the discretion afforded to *pro se* plaintiffs, the Court considers whether the Plaintiff has sufficiently pleaded a claim for defalcation.

A finding of non-dischargeability for defalcation requires a showing of "(i) the existence of a fiduciary relationship between the debtor and the objecting creditor, and (ii) a defalcation committed by the debtor in the course of that relationship." *In re Yoshida*, 435 B.R. at 108. "The question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." *Andy Warhol Found. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999).

The Bankruptcy Code does not define "fiduciary." *See In re Hayes*, 183 F.3d at 167; *In re Yoshida*, 435 B.R. at 108. "The broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)"; rather, the term's scope "is a matter of federal law." *Zohlman v. Zoldan*, 226 B.R. 767, 772 (S.D.N.Y. 1998); *see also Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 80 (Bankr. E.D.N.Y. 2005). A fiduciary relationship under § 523(a)(4) may be an express trust, technical trust, or statutorily imposed trust. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934); *Yankowitz Law Firm, P.C. v. Tashlitsky (In re Tashlitsky)*, 492 B.R. 640, 644 (Bankr. E.D.N.Y. 2013); *In re Yoshida*, 435 B.R. at 102.

A fiduciary relationship may arise where power and knowledge within a corporation are concentrated in one individual. *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). Majority shareholders who dominate the corporation's affairs are fiduciaries, and their powers are held in trust for the benefit of minority shareholders. *S. Pac. Co. v. Bogert*, 250 U.S. 483, 492 (1919); *see also Pepper v. Litton*, 308 U.S. 295, 306 (1939) (classifying "a dominant or controlling stockholder or group of stockholders" as a fiduciary). Corporate officers and directors are likewise fiduciaries. *Pepper*, 308 U.S. at 306; *Twin-Lick Oil Co. v. Marbury*, 91 U.S. 587, 588 (1875); *see also Rothman v. Beeber (In re Beeber)*, 239 B.R. 13, 32 (Bankr. E.D.N.Y. 1999)

7

("The law is clear that a corporate officer and director has a fiduciary duty to the corporation itself as well as the stockholders in general.").

The meaning of "acting in a fiduciary capacity" implicates state law "to the extent that [state law] prescribes elements of a trust or regulates fiduciary obligations." *In re Tashlitsky*, 429 B.R. at 644. For instance, while closely held corporations commonly operate with a lesser degree of corporate formality than publicly held corporations, in New York, a shareholder of a closely held corporation owes fiduciary duties to his fellow shareholders, in addition to those fiduciary obligations that arise out of his role as an officer or director of the corporation. *Fox v. Koplik (In re Perry H. Koplik & Sons, Inc.)*, 476 B.R. 746, 797–800 (Bankr. S.D.N.Y. 2012), *adopted in relevant part by* 499 B.R. 276 (S.D.N.Y. 2013), *aff'd*, 13-3472-CV, 2014 WL 2109064 (2d Cir. May 21, 2014); *Global Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 212 (N.Y. App. Div. 2006). New York considers the secretary of a corporation to be a fiduciary. *Vogel v. N.Y. State Dep't of Taxation & Fin.*, N.Y.S.2d 862 (N.Y. Sup. Ct. 1979) (citing N.Y. Bus. Corp. Law § 715).

Here, Viking qualifies as a closely held corporation, since the shares were divided amongst only three individuals at the time the parties entered into the Agreement. Also, the Debtor signed the Agreement on behalf of Viking as "Secretary." Compl. Ex. B 9, ECF No. 1-4. Furthermore, the Complaint alleges that beginning in October 2005, the Debtor, together with Michael Fontana, dominated Viking's operations and controlled its finances. Compl. ¶ 11, ECF No. 1. The Debtor's access to corporate funds appears to have been unrestricted, as he purportedly excluded the Plaintiff from exercising any managerial oversight and prevented the Plaintiff from viewing Viking's books and records. Compl. ¶ 11, ECF No. 1. Therefore, under the standard of Rule 8(a), the Plaintiff sufficiently pleaded that the Debtor acted in a fiduciary capacity.

Next, to determine whether defalcation occurred, the Court must look to the fiduciary's duties in the course of the relationship, which can be ascertained by looking to state law. *See Rogers v. Guar. Trust Co. of N.Y.*, 288 U.S. 123, 130 (1933); *In re Hayes*, 183 F.3d at 166 ("Although the precise scope of the defalcation exception is a question of federal law, its application frequently turns upon obligations attendant to relationships governed by state law."). For instance, New York law specifies that fiduciaries may not "use their position for their own personal advantage or for that of their confederates or to the detriment of stockholders." *Schwartz v. Marien*, 335 N.E.2d 334, 338 (N.Y. 1975).

Defalcation requires "an intentional wrong," which includes both knowingly improper and reckless behavior as defined by the Model Penal Code. *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013). A fiduciary behaves recklessly when he "'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* at 1759 (quoting MODEL PENAL CODE § 2.02(2)(c) (1985)).

Whether the debtor breached his fiduciary duty is a question of fact. *See In re Beeber*, 239 B.R. at 32; *Schwartz*, 355 N.E.2d at 339. Courts rigorously scrutinize the dealings between a fiduciary and the corporation that he serves, with the fiduciary bearing the burden "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Pepper*, 308 U.S. at 307; *see also Schwartz*, 355 N.E.2d at 339 ("Determinations as to whether the activities of [fiduciaries] were undertaken in good faith for a legitimate corporate purpose . . . depend not only on an analysis of the objective facts but as well in part on an appraisal of [fiduciaries'] motives, involving as it will issues of credibility."). Suspicious circumstances include a fiduciary treating the affairs of the corporation as his own "corporate pocket . . . with disregard of the substance or form of corporate management." *Pepper*, 308 U.S. at 309.

The Complaint alleges several instances of the Debtor's misappropriation of Viking's assets for his personal advantage or for the benefit of other corporate entities he owned.  For example, Viking allegedly reversed credit memos for payment owed to it by Central, overpaid Central, and paid Michael Fontana for work done on behalf of Central. Compl. ¶ 11, ECF No. 1. Purportedly, the Debtor also used Viking's credit to purchase equipment on behalf of other businesses in which the Debtor held an interest. Compl. Ex. A ¶¶ 14–15, ECF No. 1-3. Furthermore, the Plaintiff avers that Viking defaulted on its debts and opened new bank accounts under the false authorization of a "Board of Directors." Compl. Ex. A ¶¶ 11–12, ECF No. 1-3. When taken in a light most favorable to the non-moving party, the Complaint alleges that the Debtor, while acting as a fiduciary, knew or consciously disregarded a substantial and unjustifiable risk that his conduct would violate his duties to Viking and to the Plaintiff, a shareholder of Viking.  Thus, the Complaint sufficiently pleads the elements of defalcation.

### B.  Fraud

Having established the Debtor acted in a fiduciary capacity, the Court considers whether the Complaint states a claim of fraud.  The Bankruptcy Code incorporates the common law elements of fraud, "includ[ing] a false representation, scienter, reliance, and harm." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006).  The fraud exception to discharge pursuant to 11 U.S.C. § 523(a)(4) requires intentional deceit, and is thus akin to actual fraud. *Evans*, 469 F.3d at 283; *G.W. White & Son, Inc. v. Tripp (In re Tripp)*, 189 B.R. 29, 35 (Bankr. N.D.N.Y. 1995).  In bankruptcy, actual fraud requires proof of the "five fingers" of common law fraud:

> (1) that the defendant made a false representation, (2) the defendant knew it was false at the time is was made, (3) that the defendant made the representation with the intention of deceiving the plaintiff, (4) that the plaintiff justifiably relied on the representation, and (5) the plaintiff sustained damages that were proximately caused by the false material representation.

*Am. Honda Fin. Corp. v. Ippolito (In re Ippolito)*, No. 12–8403–AST, 2013 WL 828316, at *5 (Bankr. E.D.N.Y. Mar. 6, 2013) (setting forth the common law elements of fraud that a plaintiff must satisfy to sustain an objection to dischargability under § 523(a)(2)(A)).

A claim of fraud must satisfy the heightened pleading standard of Rule 9(b). *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Rule 9(b), made applicable through Bankruptcy Rule 7009, requires that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To "state with particularity the circumstances constituting fraud or mistake," the complaint must specify the statements that the plaintiff contends were fraudulent, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. *See Chang*, 355 F.3d at 170; *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). To establish "[m]alice, intent, knowledge, and other conditions of a person's mind," the plaintiff must "plead facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). "[S]peculation and conclusory allegations" will not suffice. *Id.* (citation omitted).

The Plaintiff contends that the Supreme Court Judgment and District Court Judgments are debts incurred for fraud because they stemmed from the Debtor's breach of the Agreement. While the Agreement settled the Dissolution Action, and the Plaintiff premised his petition in the Dissolution Action upon fraud, that alone does not meet the Rule 9(b) pleading requirements. The instant Complaint fails to allege that the debts arose from particular fraudulent statements or identify specific instances of misrepresentations or omissions made by the Debtor. Likewise, the Complaint does not state where and when such statements were made, and it does not offer any explanation why the statements were fraudulent. The Plaintiff has insufficiently pleaded fraud

for the purposes of § 523(a)(4).  Thus, the Debtor is granted partial judgment on the pleadings to the extent that the fraud cause of action is dismissed, without prejudice to the Plaintiff's opportunity to replead.

### C.  Embezzlement and Larceny

Claims of embezzlement and larceny under 11 U.S.C. § 523(a)(4) differ from fraud and defalcation in that neither require that the debt have been incurred in a fiduciary capacity. *Bullock*, 133 S. Ct. at 1760.  Federal law defines embezzlement as "the fraudulent appropriation of property by a person to whom such property has been intrusted [sic], or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1895); *Great Am. Ins. Co. v. Graziano (In re Graziano)*, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983).  To prove embezzlement, the plaintiff must show that "(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent." *Indo–Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 40 (Bankr. E.D.N.Y. 2011).  A partner or employee who diverts a corporation's funds for his or her own use commits embezzlement within the meaning of § 523(a)(4). *See Race Place of Danbury, Inc. v. Scheller (In re Scheller)*, 265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001); *In re Graziano*, 35 B.R. at 595.

Larceny is defined as "the fraudulent and wrongful taking and carrying away [of] the property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Graziano*, 35 B.R. at 594 (citing *Moore*, 160 U.S. at 269).  In contrast to embezzlement, where the defendant initially holds rightful possession of the property, larceny requires a wrongful taking. *Moore*, 160 U.S. at 269.  To prove larceny, the plaintiff must show that the debtor "wrongfully took property from the rightful owner with fraudulent intent to convert such property to [the debtor's] own use without the owner's consent." *Dynamic Food*

12

*Serv. Equip., Inc. v. Stern (In re Stern)*, 231 B.R. 25, 26 (Bankr. S.D.N.Y. 1999) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901, 903 (7th Cir. 1991)); *see also Farina v. Balzano*, 127 B.R. 524, 532 (Bankr. E.D.N.Y. 1991).

The Plaintiff alleges that after the Debtor seized control of Viking in October of 2005, the company engaged in dubious business practices. Specifically, the Plaintiff asserts that Viking purchased equipment for Central without reimbursement. Compl. Ex. A ¶ 18, ECF No. 1-3. Viking also allegedly subcontracted the entirety of its sheet metal business to Central without competitive bidding and overpaid for its services. Compl. Ex. A ¶¶ 15–17, ECF No. 1-3. Moreover, Viking assertedly paid Michael Fontana, a shareholder, for work performed at unrelated entities. Compl. ¶ 11, ECF No. 1; Compl. Ex. A ¶ 13, ECF No. 1-3. The facts as set forth in the Complaint suggest that the debts more likely arose from embezzlement than larceny, because the actions seem to have occurred within the context of the Debtor's duties at Viking. However, the contentions are sufficient under Rule 8(a), and the relaxed standard afforded to *pro se* plaintiffs, to give rise to the inference that the Debtor, acting in either the rightful capacity of a director of Viking or outside the scope of his authority, possessed corporate property and appropriated it for a use other than that for which it was entrusted.

Embezzlement and larceny both require the demonstration of fraudulent intent, which must satisfy the Rule 9(b) pleading standard. *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990). While Rule 9(b) allows for intent to be "alleged generally," the heightened pleading standard requires a plaintiff to support allegations with facts which give a rise to a "strong inference" of fraudulent intent. Fed. R. Civ. P. 9(b); *Conn. Nat. Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) ("[A] plaintiff realistically cannot be expected to plead a defendant's actual state of mind."); *see also Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir. 1985). Under Rule 9(b), "[t]he requisite 'strong inference' of fraud may be established either (a) by alleging

13

facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128.

The Plaintiff pleaded sufficient facts under this standard to give rise to the inference that the Debtor's position within Viking afforded him opportunities to misappropriate the corporation's assets for his own benefit, particularly through the transfer of funds, business opportunities, or other assets to separate corporate entities in which the Debtor held an interest. As Central's sole shareholder, the Debtor's motive to use his authority at Viking to benefit Central is clear.  Furthermore, even in the absence of motive, the Plaintiff alleged a pattern of unethical conduct by Viking under the Debtor's control.  Therefore, Plaintiff's Complaint sufficiently pleads the elements of both embezzlement and larceny.

V.    **CONCLUSION**

For all the foregoing reasons, the Motion is denied as to defalcation, embezzlement, and larceny.  The Motion is granted as to fraud; and the Plaintiff has thirty days leave to file an amended complaint.  A separate order will issue.

**Dated: August 12, 2014**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**

14